All rise. This Honorable Hello Court of the Judicial District of Omaha is now in session with the Honorable Tracey Wright, Executive Justice. Thank you. You may be seated. We're so glad to be joined by our colleague Justice Litton, who is not feeling 100% today. So if he happens to exit during the call, please do not be alarmed or disturbed. But he's a real trooper to be here feeling the way he feels.  3-12-0314, Capals Crementi, Honorable Shane Boyles. This is Washington Board of Police Commissioners at all. I believe that you may be proxy. Counsel. Thank you, Your Honor. You're welcome. Good morning. Good morning. What brings us here today, brings our particular case before you today, is a question of whether or not a Washington police officer was probationary or not. And with respect to the plaintiff, our three arguments as to why she was no longer probationary are, first of all, that the rule of the Washington Police Commission established an 18-month probationary period, which does include the phrase active duty. That same rule, however, is finite in that it establishes an optional 6-month extension period, establishing, therefore, a minimum of 18 months or a maximum of 24 months. The rule stops about an 18-month probationary period of active duty, does say active duty, but the 6-month extension mentioned in the rule does not use the term active duty. It says 6-month period. We believe that rule, the rule that was in effect, that talks about an 18-month minimum or a 24-month maximum, does not define the phrase active duty. So in that circumstance, when there is, in essence, a vacuum with respect to the definition of active duty in the rule, we think it's appropriate to look to the statute, the enacting statute under which the fire and police commissioners exist. The statute, Sections 23 and 24, talks about active duty. Section 23 authorizes, for lack of a better term, a tolling, a stoppage of an employee's service. It's not specific to probationary. However, the very next section, Section 24, says that when the person comes back, if the person comes back, the period of time that they were gone is not held against them. And we believe that under the rule, in effect, even if active duty means what the defendant commission says it means, under the statute, once the plaintiff came back from work, she was entitled to be credited for the time that she was gone. Mr. Wills, what disposes the purpose of probationary period? Probationary period is designed so that the employer can determine whether or not they want to keep the officer, whether it's an officer, a firefighter, a teacher, etc. And to see how they behave under the conditions of the job. Absolutely. That's correct. So can they do that when the employee isn't there? Yes, I think they can. Can they do that when the employee's not there? That direct question, probably not. In this particular case, though, even they say she was there for 13 months. So their argument is we needed that extra 5 months to judge her qualifications. Which, I don't know if that's accurate or not, because the 5 months that they're talking about, they say she was there for 13 months, and she was employed for 27. So under their interpretation, and the interpretation of the trial court below, 27 months is not 18 months. And actually, if she had only been there for 13 months, then 32 months would have to be 18 months under that interpretation. So I agree that the person needs to be there, they need to have the period of time to evaluate that. But their rule established a maximum 24 month period, and they did have that 24 months. They had 27. Okay. The second argument as to why this probationary period is that that rule, the same rule where the word active duty appears, requires action by the board. The defendants have emphasized the two words active duty. I don't believe they've mentioned the 6 month extension in their arguments. And they definitely overlook the fact that to extend the probationary period, the board had to take action. And that didn't happen in this case. The board only did two things. They hired the plaintiff, and 27 months later they fired the plaintiff. The rule talks about how to extend a probationer's term. It talks about the procedure the board must follow to extend that term. And that procedure only applies to probationers. It doesn't apply to full members of the department. In this case, the defendants are saying they didn't need to follow those procedures because they merely told the probationary period rather than extend it. And that's really a distinction without a difference. Tolling something and extending it are the same thing, and their procedure establishes the process they have to follow if they're going to extend it, even if they want to call that tolling it. It requires action by the board to do so, which didn't happen in this case. And it requires prior written notice, which also didn't happen in this case. During the 27 months, were there 18 months where she reported to the police department where she was physically present? Reported, yes. Physically present, no. So for 13 months she was physically present? I believe so. I don't know exactly what the terms of her excused absence were. I don't know if she was required to report from time to time. I don't know if she was required to report for training. She wasn't actively engaged in the on-street full duties of a police officer. That would be correct. But we don't have an administrative record from which to find that. That's just extraneous material in this administrative review process. The board was required to act, but that's really all the board does. If the board does not supervise, that responsibility, the courts have said, that responsibility lies with the chief of police and his subordinates. The board only hires, promotes, certifies for promotion, discharges, those sorts of things. And the board didn't do any of those things in this case for a period of 27 months. And this case is really no different than multiple other cases, including both public servants, law enforcement personnel, firefighters and teachers, where inaction is all that is required for the probationary period to expire. The defendants seem to argue that the plaintiff could not complete her probationary period absent some sort of official action by them, that they hadn't declared that she had completed her probationary period. And that's contrary to the law, and it's been that way for over 100 years. Once the term expires, the person is no longer on probation. That's well-settled law in Illinois. And it's well-settled law that the term expires unless there is beneficial action by the board, which didn't happen in this case. The third argument is that the board was powerless even if their rule said active duty. And even if active duty meant 18 months, however long that may be, which is really what the argument of the defendant is. The statute controls. Under the statute, under Section 24 of the Act, the legislature intended that when a person is gone for disability reasons, which is what I believe the defendants claim here, she was unable to perform her job for a period of time due to pregnancy, and therefore disabled for a health reason, and later unable to perform her job because of an on-the-job injury. Also a disability for a health reason. In those circumstances, so long as the person comes back to work, the legislature has decided in Section 24 of the Act that those periods of absence will not be held against the officer. Does that speak to probationary periods? It does not speak to probationary periods. But the statute, Section 24 of the Act, does not use the term available. And throughout the Act, remember, for example, Section 17 of the Act, that's really what this case is about. Under Section 17 of the Act, members of the department are entitled to the due process protections of Section 17. Section 24 doesn't use any term that is found elsewhere in the Act. I believe they either use the term person or officer. They probably use the term person because it applies to firefighters as well. But they don't use the term member, so it's not specific to members. And that would make sense because I think the defendants' argument that what they have basically said is that under Section 24 of the Act, she would be credited for seniority, and they don't deny that, but they say that only matters with respect to layoffs. So under their interpretation, a person that is gone for the reasons specified in Section 23 of the Act, who was laid off, would potentially have greater seniority rights than the person hired to replace them, if the person that was hired to replace them was continuously employed for the probationary period. Which, that doesn't make any sense either. Section 24 applies if the person comes back to work. And that is the part of this case that the trial court overlooked, and which the defendants overlooked as well. Had the plaintiff not come back to work from either one of her absences, then perhaps the decision to hold those periods of absences against her was correct. But she came back to work each time, and that was a mutual action on both parties. Once she comes back to work under Section 24 of the Act, it is as if she had nothing more. You asserted that the pregnancy leave was a type of medical disability. Correct. It was 11 months long? Does the record contain any medical information from a physician saying she was unable to perform her duties during those 11 months? There is no record. The board summarily terminated that. There is a record of the action they took, but there is no hearing. So when she took the pregnancy leave, did she provide documentation to her employer that she couldn't do her duties? Or did she request the pregnancy leave? I don't know if the leave was ever granted. That's just a term that's come out of this case. She told her chief she was pregnant. I don't know if that was in an email or orally. She may have provided doctor's notes, but I don't know that for sure. It may have just been a situation where she said, okay, come back to work when you can. She was excused by the chief of police. He didn't pursue charges with the Fire and Police Commission. And she didn't fight the fact that they excused her from reporting to work? Nobody did, that's correct. Was it by agreement then? You're asking a union attorney if an employer can make an agreement with an individual. All right, that's an unfair question. I withdraw the question. I don't think there's any disagreement, if that answers your question. But, again, that's another aspect. It just seems generous to me, having gone through two pregnancies while wearing a black gown. Yes, I understand that as well. And I don't recall if there were complications at the beginning or the end. But my duties were very different from those of a police officer. And that's the reason I asked the question, but you can certainly move on. Right. And, well, to answer your question, I think it may have been a situation where this was the first female pregnant police officer. Yes, yes, yes. Counsel, you have two minutes. Thank you. The bottom line, as we see it, is that the defendant's only job is to take official employment action with respect to this person. And they didn't do that. They didn't extend her probation. Maybe they could have, but they didn't. So the only two parts of the record before you is that she was hired, and then 27 months later she was fired. And I get the urge to look to the merits, to look beyond the procedure, but that's not what happens legally. Procedure matters. And there are cases about that. There's the Brunstrom case. I think that was before this court in 1977. And the Probus case, where the boards don't follow their own rules and do things properly. Their decisions are endowed. And here we don't even have any express decision that she was probationary. It's an implied decision based upon an implied exception to the general rule of an 18-month probationary period at a minimum, or maximum 24-month probationary period. And because she was employed for 27 months, and because a 32-month probationary period is irrational, we believe she completed her probationary period and was discharged from the office. Thank you. Thank you. Mr. Boyles? No. Oh, I'm sorry. I'm sorry. I'm suffering from a cold, and I must have a foggy brain this morning, too. Not a problem. This case comes before the court basically centering on the rule of probation that was required by the Washington Police Commission that all newly appointed officers go through a period of probation. Specifically, the rule is, in Chapter 4, Section 1 of the Police Commission rules, that all newly appointed officers to the police department must complete a probationary period of 18 months of active duty. Now, the plaintiff, in an attempt to get around the active duty requirement and the active duty component of the rule, has raised a myriad of issues that have essentially unduly complicated what's actually a very simple and straightforward question. And that is, at the time of her termination, was Officer Scraminti a probationary officer? Had she completed 18 months of active duty to satisfy her probation? If she had not, she was subject to summary dismissal, which is what the board did in this case, and the board's decision is to be affirmed. And I think one of the important things we need to look at here, and it wasn't addressed necessarily on oral argument to this point, but it is addressed in the briefs, and that is, what is the standard of review? And the plaintiff is arguing consistently that it's a de novo standard of review, that the court is to come in and look at things anew, and I believe that's a misstatement of the law. Primarily, the plaintiff is relying, as they cited in their reply brief, on the 1953 Supreme Court case of Harrison, which, when you examine that case, is really a case comparing the standards of review under writs of certiorari to the standard of review under the Administrative Review Act, which in 1953 was relatively new at that point. But even Harrison talks about the standard of review under the Administrative Review Act as being that of against the manifest way of the evidence. I think a more succinct and clear-cut explanation is found in the Supreme Court case from 2008 of Sinkis v. Village of Stickney, which I cited in my brief. The court there examined that there's various things, whether you're looking at a question of fact, a question of law, or a mixed question of law and fact. If you're looking at a question of fact, the standard is clearly whether the decision of the agency is against the manifest way of the evidence, and the court's not to retry the case, not to re-weigh the evidence, not to make its own determinations, but to look at the record and see if there's evidence to support the decision, and if there is, the decision should be affirmed. On mixed questions of law and fact, the standard is clearly erroneous. Where the facts are understood and not disputed and where the law is understood and the question is merely how do the facts apply to the law, the review is whether the agency's determination was clearly erroneous. Only in situations where you're talking about a pure question of law is the de novo standard of review at issue. The plaintiff goes on to argue that essentially because what we're talking about here is a rule of the police commission, that rule has the effect of law and the interpretation therefore is a question of law that therefore gets the de novo standard. But that overlooks the entire series of cases that talk about what the reviewing court's duty is and what the standard is in reviewing an agency's rulemaking authority and its interpretation of its own rules. Specifically, those cases talk about when a reviewing court is reviewing an agency's interpretation of its own rule, that substantial deference is accorded to the agency with regard to its interpretation of the rule because the agency has the expertise and the responsibility for enforcing that rule. In this situation, then the court is looking at whether the agency's interpretation has a reasonable basis in the law and if it does, the court is not to interfere with the interpretation unless it's plainly erroneous. So that's the standard that we need to look at here to the extent that we're looking at the factual issue of what time the plaintiff worked or did not work and even to the extent that there's an interpretation of the rule that's at issue that's still substantial deference accorded to the agency here. And plaintiffs that did touch on this tries to avoid the manifest way to the evidence standard by arguing where there's no record. The board didn't do anything, didn't have a hearing, and then counter to that at times argues, well, if there was a hearing, the plaintiff was entitled to notice and the opportunity to be heard. But the fact that the argument that there was no hearing, there was no decision-making by the board is a misstatement of the record. And I would cite specifically to C-260 within the record, and it's in the appendix, the plaintiff appellant's brief at A-52. And that's the minutes of the July 21st, 2010 meeting of the police commission of the city of Washington. And when you review those minutes, there was a number of things that were considered and dealt with by the board at that meeting, one of which was the evaluation and retention and or dismissal of Officer Scrementi and her probationary status. And it reflects that the board went into executive session, discussed it, came out of executive session, and voted to terminate Officer Scrementi as an unsuccessful probationary officer. And then at C-261 is the notice that the board sent to the chief of police of their decision to terminate Officer Scrementi as an unsuccessful probationary officer. So in this situation, there had been a decision of the probationary status of the plaintiff and there had been consideration of that because they acted to terminate her as unsuccessful. I would also point out, as counsel has correctly identified, the board isn't in the direct responsibility for supervising anybody. And the commission rules, when you look at that, identify that the board will get reports periodically from the supervisors and the commanding officers and the police department as to evaluation. And at that meeting on July 21st, 2010, the deputy chief was there as well as the chief of police present for the board and participating in that. So here what we have, we go back to the, I think the overriding principle of law is undisputed, and that is officers who are on probationary status are not entitled to protections found in Section 17 of the Municipal Code that say that you can only be discharged for cause and with notice and opportunity to be heard. And understanding that that doesn't apply to probationary officers, then what we look at here is what's the rule. The rule is 18 months active duty time for probation and then what plaintiff's work history was. She was hired on March 31st, 2008. She worked for a period of about 13 months until she went on pregnancy leave on May 6th, 2009. From May 6th, 2009, she was on a maternity leave surrounding complications with her pregnancy until March of 2010. So she was on from March 31st of 2008 to May 6th of 2009, it was about 13 months that she was on active duty. She then went on leave for a period of 10 months where she was not reporting. And again, within the record, there are memos from the deputy chief to officers when she returned to active duty,  that she hadn't been reporting. So she was on a period of leave then for 10 months on maternity leave. She was back for three weeks and then went on a disability leave for a back injury for another three months. Then she came back for a couple of weeks and then the July 21st, 2010 meeting was had in which her employment was terminated. So all together, she had about 14 months on active duty and about 13 months on leave from active duty and that made up the 27 months from the time of hire to the time of termination. And I think here, at least as the manifest way to the evidence standard, in light of the rule of the board, it's clear that she had not served 18 months on active duty during that period of time. And to the extent that we're attacking the rule itself,  again, when you look at the cases, they talk about board's review of an agency's interpretation of its rules and its construction of the rules. The language of even a commission rule is to be given its plain and ordinary meaning. An active duty has a plain and ordinary meaning. You're out there performing the duties of a police officer. And again, in light of the fact that the standard is whether the agency's interpretation of its rule is reasonable and has a reasonable basis in the law, the Supreme Court in the Roman decision in 1978 that pointed out that probationary officers can be summarily discharged noted the value of probationary periods and talked about the fact that written and physical testing can't really determine whether an officer is qualified for the job no more than a PhD says somebody can teach. And they pointed out that police work is stressful, it's dangerous, and only if you observe the individual and actual performance of police duties can you tell whether they have, in their terms, the mettle to do the job. And also can you determine if they're lazy, if they're insubordinate, if they're dishonest, if they're rude. So you need that period to observe them. And the rule itself is meant to provide just that. It's 18 months of active duty, not simply be employed or on the rolls for 18 months from the date of hire. And the board's consideration of that provides if you're on active duty, the supervising agents at the police department can observe whether you've got the qualifications, the characteristics, the ability to perform the job. And we get to the argument then, next, is this claim that somehow by her not having completed her probationary period after 27 months because she hadn't completed 18 months of active duty, when she returned from her periods of leave, she was entitled to be credited with seniority and that somehow took care of her probationary requirement. And this, again, is a purposeful attempt to blur the lines between two distinct concepts, seniority and probationary. Seniority comes into play under Section 18 of the Municipal Code and it talks about seniority shall be used at the time of any reductions in force or reductions in rank and layoffs and things of that nature. So that when a determination is made to lay off an officer or to reduce the number of sergeants or the number of lieutenants, you look at the length of time they were in that rank or grade or the length of time they were in the department and making the decision as to who gets reduced or who gets laid off. And that's the purpose of seniority under the Code. So when you consider that with Sections 23 and 24, which talk about the leave from active duty for disability and then the return to active duty from a period of leave, you're to be credited with seniority. And that's for purposes of the reductions in force and the layoff. And it's merely a recognition of the length of time on the department for purposes of seniority for layoffs and reductions. It's separate and distinct from the concept of probationary. Probationary is the Roman court acknowledged. It's a period of testing. It's a period to see if the qualifications are met. And I cite in the dictionary the dictionary definition, the plain meaning of the term probation. And it's a period of testing to determine if the person possesses the characteristics and the qualifications for the job. So we're talking about seniority, which is length of time, versus a period of testing. They're distinct concepts. And Section 24 does not at any point talk about probation or use the term probation. It's merely credited with seniority. And you can have seniority and not have completed a probationary period or a period of testing. You can have that among two probationary officers with different hire dates. They're both on probation. They have different levels of seniority. So they're distinct concepts. And you could have a situation where you have an officer hired on May 1st and an officer hired on May 30th. The officer hired on May 1st, 30 days into the job, takes a leave of absence for whatever reason, called the military service, medical leave, whatever it is, and be gone. If it was military service, they could be overseas for a period of 12 months or longer. And the officer hired on May 30th is employed continuously for 18 months on active duty. So they complete their active duty 18-month requirement of probation. They're off the probationary period. Now the officer comes back from military leave 12 months down the road. He was only on active duty for a month. He still has 17 months of probationary period left. So he has greater seniority than the officer off probation, but he is still on probation. And I don't think that that's an absurd or an illogical concept. You still need to determine whether the officer has met the qualifications and has the ability to do the job. And then there's been some level of argument that the board has to take some action here to grant periods of leave and to do something affirmatively to address that. And, again, when you look at 23 and 24 of the municipal code, it talks about leaves granted by the board, and that's what requires board action here. There are possibilities that you could have leaves of absence that are not granted by the board, in which case the board is not required to act. And the example is, and it's cited in both parties' briefs, is the Parisi v. Jenkins case. And in that case, chief of police actually moved to terminate an officer who had returned to active duty after being on leave from the police pension fund, not from the board of commissioners. The officer was disabled, applied for a disability with the pension fund. The pension fund put him on leave, and the pension fund act provides that the pension fund board can certify an officer for return to duty after the disability is over. The officer came back, was certified by the pension board, came back but didn't apply to the police commission for reinstatement. The chief moved to terminate, saying he violated the act. The court there said no. The police commissioners didn't put him on leave. The pension board put him on leave. So the board, in this case, the commissioners, didn't have to act to reinstate him. And again, we have the same situation here. Officer Scramini didn't apply for a leave on her maternity from the board. If you look at Section 23, for medical leave under Section 23, that applies by the plain language. When there is an injury in the performance of duty and the officer is temporarily disabled, the officer can apply for leave to the police commission, and that leave shall be granted. In this case, her maternity leave was obviously not a leave, not an injury occurred in the performance of duty, so it doesn't fall even within the provisions of Section 23 for the board to grant that leave. That doesn't mean that the department or the city couldn't grant that leave, but it doesn't require the board to act. And the last point I want to touch on is this notion that the board had to give notice and had to act to extend the probation. And again, that's a misdirect, because in this case, the probation wasn't extended. That's never been an argument, and that's never been anything that the city or the police commission has relied upon. The argument here is that the police commission rule is that the probationary period is 18 months of active duty time. The plaintiff, by the undisputed facts, did not serve 18 months of active duty time, so she did not complete her probationary period by the time she was terminated. So there was no need to extend it, and there was no action by the board taken to try to extend it. Thank you. When she came back after the 11 months off, she came back on March 18th and learned that the probationary period was not going to be treated as expired. It would have expired in September of 2009. Once she learned of that, did she take any action to dispute the chief's decision? No, she didn't. Actually, the first time that she came back from her maternity leave, if you look at the memo in the record, the memo in the record on the first period of leave demonstrates that her FOP rep, her union rep, was there as well, and she was there, and the deputy chief was the actual one who delivered the memo with her new end of probation date, and there was no challenge, there was no dispute. And similarly... Thank you. Okay. Counsel. First of all, with respect to the standard of review, I think what the defendants have just asked you to do is defer to the behind-closed-door executive session of an administrative body, which there is no record. That's not what the Manifest Weight of the Evidence standard is about. The Manifest Weight of the Evidence standard clearly doesn't apply. It makes no sense. The idea behind the Manifest Weight of the Evidence standard is that this court would adopt the factual findings made at an administrative hearing. There was no administrative hearing. And then again, the defendants are relying upon their construction of an administrative rule, and that is a classic example of where de novo review applies. With respect to that particular question, the construction of the rule, the defendants once again failed to mention the maximum 24-month probationary period. They talked extensively about 18 months of active duty, which under their interpretation in the trial court's ruling would have been 32 months in this case. However, there is a 24-month period mentioned in the rule. The rule says, all original appointments shall be for a probationary period of 18 months of active duty. No doubt that it says that. But it goes further to say, said probationary period may be extended for up to an additional six-month period by action of the board upon prior notice to the officer. And they just again said, well, they didn't need to do anything. In effect, it was the plaintiff who extended her probation, not the board, because she didn't show up to work. That's not how it works. If she could extend her probation, then why couldn't she terminate it? What the construction urged by the defendants is contrary to established rules of statutory construction, where a person looks to the entire version of the rule, not the two words active duty. And the construction urged by defendants reads away, in essence, two sentences of the rule. It reads away the entire provision about prior written notice and action of the board. That's in there for a reason. The reason it's in there is for probationary officers. It doesn't apply in any other circumstance. And the interpretation urged by them, through which the board doesn't have to take any action at all to extend probation, so long as they told it, is contrary to their own rules. They have to follow the rules. They can't change the rules midstream, which is really what this case is about. Finally, it is absurd that a probationer serving more than 18 months of probation could get laid off before a full member of the department through the defendant's construction of Section 24 of the Act. I didn't understand your last sentence. I'm sorry. It's absurd that a probationer could be laid off before a full member of the department. They're saying it's a dichotomous situation where you get credit for seniority, which, by the way, means length of service in the department, but not credit against your probationary term. That is an absurd construction, construction of Section 24. A probationer should not be able to keep their job above a full member of the department in a reduction-of-course situation. And it's possible that's permanent. For example, down in Alton, that police department is shrinking. Sometimes it's a temporary layoff, and sometimes it's permanent. And it wouldn't make any sense that a probationer, through an extended 32, 38, however many months, 18 months may be, probationary period, would be able to keep their job, have prior priority to their job under the statutory scheme than a full member of the department. Have the board acted... I think the last question you were asking is... Well, did she do anything? No, she didn't. She didn't, as a potentially probationary employee, challenge the decision of her employer. They didn't do anything either. They could have extended her probation. They could have done it the right way. They could have given a proper notice. That didn't happen. This memo after the fact from the deputy chief definitely was not prior written notice. It wasn't by the board, and even the defendants admit in the board that that memo from the deputy chief didn't bind anybody. It was more or less advisory. We think she was a member of the department entitled to a full hearing from the chief. The defendants violated Section 17 of the Act by terminating her without the required procedure. Thank you. Thank you. We will be taking this matter under advisement and rendering the decision with undue delay. Okay, for now we'll stand in a short recess for a panel.